IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| TEREZ LAUREL RAYMOND, | ) Case No. 04-61081 |
| | ) |
| Debtor. | ) |

MEMORANDUM OPINION

In this Chapter 7 bankruptcy case, the Chapter 7 trustee Thomas J. O'Neal, filed a motion to sell 120 acres of real estate. Mr. O'Neal also filed an objection to debtor Terez Raymond's (Terez) amended claim of a homestead exemption. Terez filed an objection to the claim filed by Fred Charles Moon, the Chapter 7 trustee in her husband, Henry Raymond's (Henry), prior bankruptcy case. Terez subsequently filed a motion to convert to Chapter 13. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (N) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I sustain Terez's objection to the claim of Fred Moon. I deny the motion to convert to Chapter 13. I grant O'Neal's motion to sell an amount of real estate sufficient to satisfy all of the allowed claims. The objection to Terez's amended claim of a homestead exemption will be addressed in the event there are not sufficient funds to satisfy all allowed claims.

FACTUAL BACKGROUND

The facts are rather convoluted in that they involve two separate bankruptcy cases,

sibling rivalries, and the transfer of real estate. I begin in 1996. On December 3, 1996, Henry and his sister Helen held title to 245 acres of real estate in three separate tracts located in Dade County, Missouri. On that date, Helen and Henry executed a general warranty deed, which was duly recorded, transferring that real estate to Terez Broach (now Terez Raymond) for one dollar. Henry continued to live on the property. Helen apparently resided elsewhere.

On October 2, 2001, Henry filed a Chapter 7 bankruptcy petition. He scheduled two small tracts of real estate with a fair market value of $100.00 and a total of $36, 125.30 in general unsecured debt. Fred Charles Moon was appointed as the Chapter 7 trustee. Mr. Moon abandoned the real estate and closed the case as a "no-asset" case. No creditors filed proofs of claim and no creditor filed an objection to the discharge of its debt. Henry received a discharge on January 24, 2002, and the case was closed that same date. Sometime in 2002 Henry married Terez. She testified that she did not reside on the real estate until after she married Henry.

On July 31, 2003, Henry filed a motion to reopen the case to amend schedule F and add an additional creditor.  This Court granted the motion to reopen the case and Henry filed an amended Schedule F with total general unsecured debt in the amount of $42,923.90. Again, no one objected to the amendment. On January 7, 2004, the reopened case was closed.

On April 28, 2004,Terez filed a Chapter 7 bankruptcy petition. Thomas J. O'Neal was appointed as her trustee. On her Schedule A she included the real estate in Dade County, Missouri, which she claimed to hold jointly. She scheduled said real estate with no value. She scheduled $32,216.27 in general unsecured claims. At the section 341 meeting of creditors,

2

Mr. O'Neal discovered that Terez held the real estate in her name alone, that the parcel consisted of 245 acres in three tracts, that one tract contained a mobile home titled in Henry's name, and that the real estate was unencumbered by liens or encumbrances. Mr. O'Neal obtained permission from this Court to hire an appraiser to value the real estate. The appraiser concluded the land would bring $850.00 per acre for a total value of $208,250.00. Mr. O'Neal asked Terez for a copy of the general warranty deed and discovered that Henry and Helen transferred the real estate in 1996 for no consideration. He notified Mr. Moon, and on October 28, 2004, Mr. Moon filed a motion to reopen Henry's case. On November 1, 2004, this Court granted that motion. Mr. Moon promptly filed a proof of claim on behalf of Henry's creditors in the amount of $36,000.

Mr. O'Neal filed an objection to Terez's claim of a homestead exemption, and he filed a motion to sell 120 acres of real estate. Terez filed an objection. On November 18, 2004, this Court held a hearing on the motion to sell. The Court continued this hearing until such time as Mr. O'Neal could establish a bar date and determine the exact amount of the claims. I sustained Mr. O'Neal's objection to a claim of a homestead exemption because Terez did not identify the tract of land that contained the mobile home. Terez then filed an amended claim of exemption, and Mr. O'Neal objected, arguing that Terez is not entitled to a homestead exemption because she attempted to conceal both her sole ownership, and the value, of the real estate.

Terez objected to the claim filed by Mr. Moon. On February 14, 2005, she also filed a motion to convert to Chapter 13. Both Mr. O'Neal and Mr. Moon objected to the motion

to convert. On March 9, 2005, this Court held a hearing on all of the above matters. As a preliminary matter, Terez testified that she has no regular source of income. She scheduled $40.00 as her net monthly income on her Schedule I. I, therefore, found at the hearing that she was not eligible for Chapter 13, and denied that motion. I also will not reach the issue of Mr. O'Neal's objection to Terez's claim of a homestead exemption. First, it appears there is equity to satisfy all of the claims without necessity of selling the homestead. Second, Terez testified at her section 341 meeting that the homestead is a mobile home titled in Henry's name. It is not clear if the mobile home is attached to the real estate, or if Terez has any interest in the mobile home. If the homestead exemption is still an issue after all of the claims are satisfied, this Court will schedule another hearing to address these concerns.

Helen Raymond and Eliza Broach, Raymond's sisters, testified that Helen transferred her interest in the real estate because Eliza told her to. Eliza testified that Helen needed constant care, and that as an over-the-road trucker, she, Eliza, was not available to provide that care. She stated that Terez and Raymond would not care for Helen if Helen refused to transfer the property. Eliza said she, therefore, advised Helen to sign the deed. Helen testified that she did not want to sign the deed, but she did so because Eliza told her to.[1]

Raymond testified that he transferred the real estate to Terez because he did not want to be bothered with it when his siblings failed to help him. He did not adequately explain why he continued to live on the property after the transfer. He did say that Terez did most

---

[1] I note that Helen's competency may be an issue in this case.

4

of the work after the transfer, and he helped her. He stated it never occurred to him to sell the real estate. He admitted he had creditors at the time of the transfer, but he failed to identify who they were. He also testified that he believed it would be a fraud on the government if he and Helen owned real estate after Helen became eligible for Social Security Disability Income (SSDI). Eliza testified that Raymond transferred the real estate so he would not have to pay his creditors. She admitted, however, that she had incurred some of the debt for which Raymond was responsible. I note at this point that I did not find anyone's testimony credible. It was obvious to the Court that there is a great deal of animosity among Eliza, Henry, Helen, and Terez.

## DISCUSSION

Mr. Moon bases his claim on the allegation that Henry transferred the real estate to hinder, delay, and defraud his creditors. He did not, however, file an adversary proceeding to avoid the transfer. He, instead, tried to establish that the creditors in 2001 were the same creditors on the date of the transfer in 1996. Mr. Moon presented a credit card receipt from the Leather Factory dated December 5, 1995, and a credit card receipt from Race Brother's Farm Supply Ace # 1, dated April 26, 1993. He also admitted receipts from Brown's Enterprise, Inc., dated January 17, 1994, Meeks Building Center, dated June 24, 1995, and Dodd's Service Station, dated March 9, 1993. He did not, however, prove any of these creditors had claims against Henry on the date of the transfer. Henry's bankruptcy schedules listed eleven general unsecured creditors. Henry scheduled these claims as arising in either 2000 or 2001. Mr. Moon did not present any evidence to dispute those dates. Henry did not

5

schedule Brown's Enterprise, Inc., Meeks Building Center, or Dodd's Service Station as a creditor in his bankruptcy case.

The chapter 7 trustee is the representative of the estate with the capacity to sue and be sued:

> (a) The trustee in a case under this title is the representative of the estate.
>
> (b) The trustee in a case under this title has the capacity to sue and be sued.[2]

The trustee, thus, succeeds to a debtor's rights, becomes the estate's representative, and may sue or be sued.[3] That power to sue, however, is not limitless.[4] A trustee may bring lawsuits that fall into one of two categories: (1) those brought by the trustee as successor to the debtor's right to bring such a suit; and (2) those brought under one of the trustee's avoiding powers.[5] In this case, Mr. Moon would have had to rely on section 544(b)(1) of the Code for the authority to avoid the transfer in Henry's bankruptcy case. That section provides that the trustee can avoid any transfer that would be avoidable under applicable state law:

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.[6]

---

[2] 11 U.S.C. § 323.

[3] *Erricola v. Gaudette (In re Gaudette)*, 241 B.R. 491, 497 (Bankr. D. N.H. 1999).

[4] *Id.*

[5] *Id.* (citing **3 Collier on Bankruptcy** ¶ 323.03[2] (15th ed. Rev. 1998).

[6] 11 U.S.C. § 544(b)(1).

I must, thus, look to state law to determine if Mr. Moon could have brought an action to avoid the transfer on behalf of Henry's creditors. In Missouri, a creditor must claim relief from a fraudulent transfer within four years of the date of the transfer, or within one year after the transfer could have reasonably been discovered:

> A claim for relief or cause of action with respect to a fraudulent transfer or obligation under sections 428.005 to 428.059 is extinguished unless action is brought:
>
>> (1) Under subdivision (1) of subsection of section 428.024, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>>
>> (2) Under subdivision (2) of subsection 1 of section 428.024 or subsection 1 of section 428.029, within four years after the transfer was made or the obligation was incurred; or
>>
>> (3) Under subsection 2 of section 428.029, within one year after the transfer was made or the obligation was incurred.[7]

Missouri adopted the Uniform Fraudulent Transfer Act (the UFTA) in 1992.[8] Since that time no Missouri court has addressed the discovery exception to the UFTA's statute of limitations. Other courts, however, have looked at this issue. In *Supreme Bakery, Inc. v. Bagley*,[9] the Rhode Island Supreme Court explained that "the heart of the discovery rule is that the statute of limitations does not begin to run until the plaintiff 'discovers, or with reasonable diligence

---

[7] Mo. Stat. Ann. § 428.049 (Supp. 2005).

[8] *Id.* at § 428.024.

[9] 742 A.2d 1202 (R.I. 2000).

should have discovered, the wrongful conduct of the [debtor].'"[10] In *Bagley*, the debtors conveyed their residence to themselves as tenants by the entirety. More than four years after the transfer a creditor sought to set aside the conveyance. The court concluded that the debtors did nothing to conceal the transfer, they recorded the deed immediately, and their mailing address at all times remained the same.[11] Thus, the court held that the creditor was not entitled to the discovery exception since it could have readily discovered the transfer.[12]

In *Baldwin v. Richins*,[13] the Utah Supreme Court held that the three-year statute of limitations periods applicable to a fraudulent conveyance action began to run when the creditors obtained judgment against the debtor.[14] Again, this decision dealt with a situation where no proof was presented that debtor concealed a transfer to his wife, and the deed was promptly recorded. The court stated that "the means of knowledge were equivalent to actual knowledge; that is, that a knowledge of facts which would have put an ordinarily prudent man upon inquiry which, if followed up, would have resulted in a discovery of the fraud, was equivalent to actual discovery."[15]

---

[10] *Id.* at 1204 (quoting *Benner v. J.H. Lynch & Sons, Inc.*, 641 A.2d 332, 337 (R.I. 1994).

[11] *Id.*

[12] *Id* at 1205.

[13] 850 P.2d 1188 (Utah 1993).

[14] *Id.* at 1196.

[15] *Id.* at 1196.

In *Rappleye v. Rappleye*,[16] the court found that a husband concealed a transfer of property from his former spouse, thus, tolling the statute of limitations.[17] The court noted that only in the absence of concealment does the statute of limitations begin running with recordation of a deed.[18]

I find, therefore, that Henry's creditors at the time of the transfer, could have reasonably discovered the transfer and sought to set it aside. Thus, any cause of action such creditors had was extinguished on December 3, 2000. Since Mr. Moon could not have brought an avoidance action as to this transfer on behalf of those creditors at the time Henry filed his bankruptcy petition, he cannot file a claim on their behalf in Terez's bankruptcy case. And Mr. Moon offered no evidence that the creditors scheduled in Henry's case are the same creditors in existence in 1996. Moreover, Mr. Moon offered no evidence as to the amount of any claims held by any creditors at the time of the transfer. For all of these reasons, I sustain Terez's objection to Mr. Moon's claim.

An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: March 23, 2005

---

[16] 99 P.3d 348 (Utah Ct. App. 2004).

[17] *Id.* at 356.

[18] *Id.*